UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

Criminal No.
24-CR-10024-IT

UNITED STATES OF AMERICA

VS.

GARY CEDERQUIST

**DEFENDANT'S SENTENCING MEMORANDUM**

Now comes the defendant, Gary Cederquist, in the above captioned matter, and respectfully submits this Sentencing Memorandum in support of the defendant's request for a downward variance from the guideline sentencing range in this case.

At the outset, Mr. Cederquist acknowledges the fact that his conviction after trial certainly poses him in a different situation than co-defendants who have already pled guilty and appeared before this Court for sentencing.[1] After a lengthy trial, the defendant was convicted of a number of the counts presented to the trial jury. Initially, Mr. Cederquist along with the other defendants was indicted on January 25, 2024 on a 74 count indictment against 6 defendants in connection with the scheme that the government presented at trial in which the Massachusetts State troopers would give passing grades on commercial drivers' licenses (CDL) tests without proper examination. As the Court is aware, cooperating witnesses participated in the prosecution of this matter and gave testimony to the trial jury along with co-defendants.

Ultimately, Mr. Cederquist was the sole defendant to proceed to trial and was convicted on May 2, 2025 on Counts 1-5, 7, 10-15, 17-33, 45-46, 48-62, 72-73. Mr. Cederquist was

---

[1] Calvin Butner, Eric Mathison, Perry Mendes and Scott Camara.

1

acquitted on Counts 6, 8-9, 16, 34, 44, 47, 63 and 71. As the Court is well aware, Butner, Mendes, Rogers and Camara entered pleas of guilty to various counts of the 74 count indictment. They have all been sentenced leaving Mr. Cederquist as the sole defendant remaining to be sentenced on this matter.

The defendant, through counsel, has reviewed the extensive Pre-Sentence Report prepared by the Probation Department as it relates to the allegations of the 57 counts levied against Mr. Cederquist of which he was convicted on 48. The defendant agrees that the Statement of Facts as set forth in the Pre-Sentence Report is correct and agrees that the calculations of the sentencing guidelines as computed and presented in the Pre-Sentence Report are likewise accurate.

The defendant, Gary Cederquist, acknowledges at the outset that his conviction represents a considered judgment by the jury after a fair trial supervised and overseen by this Court on very serious matters. The defendant acknowledges that the offenses are serious ones and, as a Massachusetts State Police sergeant and authorized CDL supervisor and tester, he had a duty to the public to insure that candidates who demonstrate their competence and ability to safely operate commercial vehicles would receive their CDL licenses. Mr. Cederquist acknowledges that his failure to insure that these various candidates as set forth in evidence at trial, some of whom did not even take a test, was a serious betrayal of public trust and, as the government has repeatedly argued, an endangerment to public safety.

At this stage in the proceedings it is now a matter of what would be an appropriate and fair jail sentence for Mr. Cederquist to receive. The defendant is well aware as the Court most certainly is aware of the sentences meted out to co-defendants, Calvin Butner, Perry Mendes, Joel Rogers, Scott Camara and Eric Mathison. The defendant acknowledges that he was in a

2

position of authority over these other defendants and recognizes the fact that his supervisory capacity was factored into the sentencing guideline calculations.[2]

The Court is aware that Mr. Cederquist initially joined the Metropolitan District Commission Police in 1987. The RMV Division of Law Enforcement and the Capitol Police were merged into the Massachusetts State Police in 1992 and were abolished as independent law enforcement agencies. At the time of the merger Mr. Cederquist became a Massachusetts State Police trooper and was ultimately promoted to sergeant on January 8, 2017. As indicated, he was the sergeant in charge of the unit from his entry in August of 2017 through February of 2023, shortly after the investigation on this case was made public. In February of 2023, Mr. Cederquist was transferred out of the CDL Unit and placed in the supply section, ultimately retiring on January 30, 2024 and received a dishonorable discharge.[3]

The defendant is requesting that this Court consider a sentence that would be not greater than necessary to comply with the statutory directive set forth in 18 U.S.C. §3553(a). Further, the defendant is requesting that this Honorable Court consider and impose a below guidelines sentence pursuant to 18 U.S.C. §3553(a)(2).

The defendant, at the outset, acknowledges that the governmental arguments in favor of imposing a jail sentence on this individual who is a Criminal History 1 with no prior criminal convictions certainly is consistent with the considerations of promoting respect for the law, affording just punishment and deterring others from similar conduct. The defendant is asking that the Court will consider the good aspects of Mr. Cederquist's life in fashioning a fair

---

[2] Mr. Cederquist was, in fact, in charge of the CDL Unit from August 6, 2017 until February 17, 2023. All tolled, there were approximately 10, on occasion, 12 troopers in the unit and all of these individuals reported to Mr. Cederquist.
[3] The defendant, as the Court is aware, was in extreme risk of losing his pension that vested as a result of his years of service. He acknowledges the accurate and detailed statement of facts in the Pre-Sentence Report and will not repeat the factual allegations herein.

3

sentence that will not be greater than necessary to achieve the purposes of §3553(a). The defendant notes that in the calculations of the offense level computation the Probation Department has assessed in paragraph 77-78 specific offense characteristic such as the defendant being a public official in a high level decision making or sensitive position. This results in a recommended increase of 4 levels pursuant to U.S.S.G. §2C1.1(b)(3) and then notes in the following paragraph specific offense characteristic if defendant was a public official who facilitated the obtaining of a governmental identification document to increase by 2. The defendant raises the issue for the Court's consideration that the specific offense characteristics set forth in paragraph 78 is duplicative of the offense involving a public official in a high decision making or sensitive position resulting in the increase of 4 levels. The defendant would therefore request that the Court not impose the 2 level increase as set forth in paragraph 78.

The defendant has considered the fact that the defendant was a police officer and not an elected public official or public official in a high level of decision making or sensitive position but, as indicated in his negotiations with the Probation Department, recognizes that the First Circuit Court of Appeals and other circuits have recognized that a police officer is in a position of decision making or sensitive position therefore no objection is taken to that calculation.

The defendant acknowledges that he was an organized ring leader of 5 or more people (Butner, Mendes, Rogers, Camara and Mathison) therefore the additional 4 point increase under U.S.S.G. §3B1.1(a) is appropriate. The defendant would agree that he has no accepted responsibility by way of a plea agreement however the defendant notes that during the trial he did not testify and present any evidence other than cross-examination of the government's witnesses and clearly the defendant was well aware and extremely remorseful of what constitutes the sad end of a otherwise respectable law enforcement career.

The defendant agrees that his criminal history, as the Court is aware, is 0 and asked that the Court will consider the personal and family information set forth in the Pre-Sentence Report in support of his request for consideration as to a downward variance. The Court is aware that Mr. Cederquist is a 60 year old gentleman who is a life-long resident of the south shore of Massachusetts. Mr. Cederquist was raised in an emotionally appropriate environment and was fortunate enough not to be exposed to such things as domestic violence, abuse or financial deprivation. The defendant's mother, however, did not multiple sclerosis but she was a strong woman and never projected her fear or depression on her children. She was always positive and the defendant acknowledged to the Probation Department that even as her illness progressed, she "always had a smile on her face."

The defendant's father passed away at the age of 74 as a result of thyroid surgery in an accidental cutting of his artery. The Court is aware the defendant's brother, William Cederquist, is presently a detective lieutenant with the Massachusetts State Police and his half-brother, Carl, is retired from the MBTA. His paternal half-brother, John, retired as an adminstrator of a waste management company.

Mr. Cederquist has 2 children, Austin, who is presently 27 and Hailey who is presently 25. Both of these children reside with their mother in Quincy, Massachusetts. Almost 20 years ago Mr. Cederquist began a relationship with his present wife, Laurie Manning, and he resides at the home at Everett Circle in Stoughton, Massachusetts with Laurie and her 2 children from a prior relationship. Laurie is a 52 year old woman who is a high school English teacher. She is very supportive of the defendant in his present difficulties in this Court.

5

The defendant notes that he worked as an employee of the Massachusetts State Police, retiring as a sergeant from August of 1987-January, 2024. Presently, he is employed as a regional sales representative for Frito Lay Company and worked out of Braintree, Massachusetts.

Mr. Cederquist, at the age of 60, has a number of medical issues that have been disclosed to the Probation Department including GERD, Barrett's Esophagus and high blood pressure. For the past 9 years he has used a CPAP machine for sleep apnea. His medications are consistent with the above maladies. As the Court is aware, the defendant has no prior criminal record whatsoever and is not a person who has suffered from substance abuse or mental or emotional deficits.

As indicated, the Probation Department has calculated the defendant to a total offense level of 28 with a criminal history of 1 constituting a guideline range of 97-121 months. The defendant acknowledges that a jail sentence is appropriate but is requesting that the Court consider a downward variance based upon the conduct which is a serious blemish on an otherwise respectable law enforcement career. This Court has been the guiding hand regarding pretrial pleas and the defendant's trial and sentencing of all the parties involved. The defendant notes for purposes of his request for a downward variance that the Court will consider proportionality in sentencing to avoid an unwarranted sentencing disparity among defendants with similar records or have been found guilty of similar conduct. 18 U.S.C. §3553(a)(6).[4]

The Court is well aware that in 2018 the United States Attorney's Office investigated Massachusetts State Police Troop E for purposes of overtime fraud. In the course of that

---

[4] The defendant acknowledges that his conduct is found by the jury and presented by the government culminating in his supervisory capacity and certainly shows a contrast between his conduct and that of the co-defendants. Nevertheless, the calculations as set forth in the sentencing guidelines as an advisory range is very stern considering the defendant's background, criminal history and the severe financial impact that this conviction has had and will have on his retirement years.

6

investigation there were also allegations of fraudulent activity by many state police troopers who were found to have abused their positions of trust. These troopers and some of their superior officers entered changes of plea on Rule 11s to embezzelment and false claim charges as well as false overtime documentation. The sentencing imposed on the individuals, as the Court is aware, was as follows;

Paul Cezanne-illegally obtained overtime in the amount of $29,287.00 and was sentenced to time served with one year of supervised release.

Gary Herman-received $12,000.00 in fraudulent overtime and was sentenced to time served with three months home confinement and one year of supervised release.

Eric Chin-received $7,125.00 in fraudulent overtime and was sentenced to time served with three months home confinement and one year of supervised release.

- David Wilson-received $12,450.00 in overtime and was sentenced to time served, six months home confinement and two years of supervised release.
- Kevin Sweeney-received $11,000.00 in fraudulent overtime, was sentenced to two months imprisonment and one year of supervised release.
- Heath McAuliffe-received $7,860.00 in fraudulent overtime, was sentenced to time served and one year of supervised release.
- David Keith-obtained over $22,000.00 in fraudulent overtime and was sentenced to two years probation and community service.
- Gregrory Rafferty-obtained over $50,000.00 in fraudulent overtime, clearly exceeding the other co-defendants and was sentenced to three months in prison with supervised release.

7

In a similar fraud case prosecuted by the District Attorney's Office in Suffolk County, Boston Police sergeant William Woodley obtained $13,000.00 in unearned overtime and received a no incarceration sentence and the case was continued without a finding.

In 2021, the United States Attorney's Office investigated allegations of fraud in the Boston Police Evidence Unit and 9 officers were initially charged. Most of these individuals received non-incarceration resolutions (reference George Finch, Joseph Nee, William Baxter who pled guilty to conspiracy and embezzlement involving thousands of dollars in false overtime, and was sentenced to probation, James Cairns, Gerard O'Brien, 2 years supervised release for convictions of conspiracy to commit theft and embezzlement in excess of $20,000.00, Richard Evans received one year in jail with a leadership role and this sentence was imposed after trial).

The United States Attorney's Office also prosecuted matters involving the Brockton Registry of Motor Vehicles corruption cases that involved bribery allegations against public employees. The sentences were consisting of low level of incarceration or home confinement and probation.

The defendant respectfully suggests that considering the above sentences and others that have been imposed on a law enforcement violator, the sentencing guidelines are severely excessive as to what would be a just sentence constituting unjust sentencing disparity. The defendant is therefore requesting that the Court, in its sound exercise of judicial discretion and consistent with its experience as a trial attorney and trial judge in the federal court, impose a downward variance.

Finally, the defendant is requesting that he be permitted to self-report to the facility once he is classified which more than likely would be within 60 days of imposition of sentence.

Gary Cederquist,
By his attorney

/s/Kevin J. Reddington, Esq.

**CERTIFICATE OF SERVICE**

I, Kevin J. Reddington, Esq., Attorney for the Defendant, Gary Cederquist, hereby certify that the following documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on October 9, 2025.

DEFENDANT'S SENTENCING MEMORANDUM

/s/Kevin J. Reddington, Esq

**Joseph Callanan**
4 Theodore circle
North Easton, MA, 02356
508-238-4703
JFCALLANAN1992@gmail.com

**August 29, 2025**

The Honorable Indira Talwani
U.S. District Court
District of Massachusetts
1 Courthouse Way
Boston, MA 02210

Dear Judge, Talwani

I am writing to offer a personal character reference on behalf of my friend, Gary Cederquist, whom I have had the pleasure of knowing for the better part of ten years. Gary is truly beloved by those who know him, and while I cannot speak firsthand to any mistakes he may have made, I can speak with certainty about the countless ways he continues to positively impact those around him.

Gary is one of the most charitable people I have ever met. Whether it's through donating, volunteering, or simply showing up, Gary always finds a way to support others. In fact, one of the first times we met was at the Mighty Meehan 5K, an event to benefit childhood cancer on Cape Cod. Since then, I've seen Gary consistently step up in support of charitable events especially those that benefit children and families in crisis.

My family runs a business that regularly organizes community fundraisers, and Gary is always one of the first people to offer his help. Just last June, we hosted a family field day for a 4-year-old boy and a 7 year old girl, both battling with cancer. Not only did Gary help in the days leading to the event, but he was the first one to arrive and the last to leave. That's the kind of man he is someone who shows up with his whole heart.

Gary is a gentle giant with a special place in his heart for kids. I've personally witnessed him brightening children's days by making them honorary state troopers with sticker badges a small gesture, but one that means the world to the kids who received it.

My high school football coach at Olver Ames High School Jim Artz burned this quote in my brain, "Character is who you are

when no one is looking." Gary lives by that principle. When my grandmother passed away two years ago the day before Christmas my family received several fully catered meals delivered anonymously. We didn't know who was behind it until one of the trays came with a slip bearing Gary's phone number. He and his wife Lori had quietly taken it upon themselves to support us in our time of grief, never asking for recognition.

Your Honor, with all due respect, I sincerely believe that our community is stronger with Gary in it. I trust him so completely that I would stake my own freedom on his character. If allowed to remain a member of the community, I am confident Gary will continue to be a force for good. I realize that's not a literal option before the Court, but I hope it conveys the strength of my conviction.

Thank you for your time and for considering my words. I respectfully ask that you take my experiences and perspective into account as you consider Gary's future.

Sincerely,
**Joseph Callanan**